

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 3, 2025**

_____

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-42132-ELM |
| MATRIX WARRANTY SOLUTIONS, INC., | § | |
| | § | Chapter 7 |
|     Debtor. | § | |
| | § | |
| BEHROOZ P. VIDA, TRUSTEE, | § | |
| | § | |
|     Plaintiff, | § | |
| v. | § | Adversary Proceeding No. 24-04040 |
| | § | |
| ASSET PROTECTION AUTO, LLC AKA | § | |
| ASSET PROTECTION, LLC DBA ASSET PROS, | § | |
| KODY LARGE AKA KODI LARGE, | § | |
| AUTOMOTIVE PROTECTION GROUP, LLC, | § | |
| JASON SEITHEL, CHRIS HUDDLESTON, | § | |
| IJJ CONSULTING, INC. DBA VEHICLE | § | |
| SERVICE DEPARTMENT, and | § | |
| JAMES BLAKEY, | § | |
| | § | |
|     Defendants. | § | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
AND RECOMMENDATION FOR (I) WITHDRAWAL OF THE
REFERENCE AND (II) ENTRY OF DEFAULT JUDGMENT**

Pursuant to 28 U.S.C. § 157(c)(1), the above-signed bankruptcy judge of the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**") respectfully submits to The Honorable United States District Court for the Northern District of Texas, Fort Worth Division (the "**District Court**"), the following proposed findings of fact and conclusions of law and recommendation for the District Court to (1) withdraw its reference of the above-captioned adversary proceeding pending (the "**Adversary Proceeding**") to the Bankruptcy Court, and (2) enter a final default judgment in resolution of the Default Judgment Motion (as hereafter defined).

### *PROCEDRUAL BACKGROUND*

1.      On July 23, 2023 (the "**Petition Date**"), Matrix Warranty Solutions, Inc. (the "**Debtor**") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby initiating Case No. 23-42132 in the Bankruptcy Court (the "**Bankruptcy Case**").[1]  Behrooz P. Vida (the "**Trustee**") was appointed to serve as the chapter 7 trustee of the Debtor's bankruptcy estate.[2]

2.      On June 20, 2024, the Trustee initiated the Adversary Proceeding with the filing of his Complaint against Asset Protection Auto, LLC a/k/a Asset Protection, LLC d/b/a Asset Pros ("**Asset Protection**"), Kody Large a/k/a Kodi Large ("**Large**"), Automotive Protection Group, LLC ("**APG**"), Jason Seithel ("**Seithel**"), Chris Huddleston ("**Huddleston**"), IJJ Consulting, Inc. d/b/a Vehicle Service Department ("**IJJ**"), and James Blakey ("**Blakey**") (Asset Protection, Large,

---

[1] *See* Bankruptcy Case Docket No 1; *see also* Trustee's Exh. 1 (Exh. A (Declaration of Loriann A. Martinez (the "**Martinez Declaration**") ¶ 1)).  All references to exhibits herein are to the exhibits admitted at the October 30, 2024, hearing on the Default Judgment Motion (as hereafter defined).

[2] *See* Bankruptcy Case Docket No. 2; *see also* Trustee's Exh. 1 (Exh. B (Declaration of Behrooz P. Vida (the "**Vida Declaration**") ¶ 2(b))).

APG, Seithel, Huddleston, IJJ and Blakey collectively referred to as the "**Defendants**").[3]  Pursuant

to the Complaint, the Trustee has asserted the following causes of action against the Defendants

(collectively, the "**Causes of Action**"):

Count I:    Breach of Contract (in relation to the AP Note and AP Note Guaranty, the
APG Note and APG Note Guaranties, and IJJ Note and IJJ Note Guaranty
(each as hereafter defined)).

Count II:    Attorneys' Fees, Expenses, and Costs of Court

3.    On June 20, 2024, the Bankruptcy Court Clerk issued a *Summons in an Adversary*

*Proceeding* (the "**Summons**").[4]  On June 21, 2024, a copy of the Complaint and Summons was

timely served on each of the Defendants by U.S. first class mail, postage prepaid, and certified

mail return receipt requested.[5]

4.    None of the Defendants answered or otherwise responded to the Complaint.[6]

Consequently, upon request, the Trustee obtained a *Clerk's Entry of Default* with respect to each

of the Defendants.[7]

5.    Thereafter, on August 15, 2024, the Trustee filed a *Motion for Entry of Final*

*Default Judgment* (the "**Motion**").[8]  As evidenced by the Certificate of Service set forth therein,

the Motion was served on each of the Defendants on August 15, 2024.[9]  The next day, on August

16, 2024, the Trustee filed a *Notice of Hearing* (the "**First NOH**") to provide notice of the

---

[3] Adv. Proc. Docket No. 1.

[4] Adv. Proc. Docket No. 2.

[5] *See* Adv. Proc. Docket No. 4; Martinez Declaration ¶ 7; *see also* Fed. R. Bankr. P. 7004(b) (authorizing service of process in such manner).

[6] *See* Adv. Proc. docket; *see also* Martinez Declaration ¶¶ 8-12; Trustee's Exh. 1 (Exhs. C-F (affidavits in compliance with the Service Members Civil Relief Act)).

[7] *See* Adv. Proc. Docket Nos. 5 and 6; *see also* Martinez Declaration ¶ 14.

[8] Adv. Proc. Docket No. 7.

[9] *See id.*, at p.15.

September 23, 2024, hearing set on the Motion.[10]  As evidenced by the Certificate of Service set forth therein, the First NOH was served on each of the Defendants on August 16, 2024.[11]

6.      On September 23, 2024, the Bankruptcy Court conducted an initial hearing on the Motion.  At that time, the Bankruptcy Court continued the hearing to October 30, 2024, to provide an opportunity for the Trustee to supplement the Motion.[12]

7.      On October 15, 2024, the Trustee filed a *Supplement to Motion for Entry of Final Default Judgment* (the "**Supplement**").[13]  As evidenced by the Certificate of Service set forth therein, the Supplement was served on each of the Defendants on October 15, 2024.[14]  (The Motion, as supplemented by the Supplement, is hereafter referred to as the "**Default Judgment Motion**").  Thereafter, on October 17, 2024, the Trustee filed an additional Notice of Hearing (the "**Second NOH**") to provide notice of the continued October 30, 2024, hearing.[15]  As evidenced by the Certificate of Service set forth therein, the Second NOH was served on each of the Defendants on October 17, 2024.[16]

8.      On October 30, 2024, the Bankruptcy Court conducted an evidentiary hearing on the Default Judgment Motion.  None of the Defendants filed a response in opposition to either the Motion, as originally filed, or the Default Judgment Motion (*i.e.*, the Motion as supplemented by the Supplement), and none of the Defendants appeared at the hearing to oppose the Default Judgment Motion.  At the conclusion the hearing, the Bankruptcy Court announced that it would

---

[10] *See* Adv. Proc. Docket No. 8.

[11] *See id.*, at p.3.

[12] *See* Adv. Proc. Docket No. 9.

[13] *See* Adv. Proc. Docket No. 10.

[14] *See id.*, at p.17.

[15] *See* Adv. Proc. Docket No. 11.

[16] *See id.*, at p.3.

issue proposed findings of fact and conclusions of law to the District Court, recommending that the Default Judgment Motion be granted.

9.       Accordingly, having now reviewed and considered the Complaint, the Default Judgment Motion, the evidence introduced at the October 30, 2024, hearing, the representations and arguments of counsel for the Trustee, and the entire record in this Adversary Proceeding, the above-signed bankruptcy judge of the Bankruptcy Court submits the following proposed findings of fact, conclusions of law, and recommendation to the District Court for consideration in reference to the Default Judgment Motion.

### *JURISDICTION AND RECOMMENDED WITHDRAWAL OF THE REFERENCE*

10.       The District Court has jurisdiction of the Adversary Proceeding pursuant to 28 U.S.C. § 1334(b), inasmuch as each of the Causes of Action asserted in the Adversary Proceeding seeks relief that is at least related to the Bankruptcy Case because the outcome of each Cause of Action will have an impact upon the bankruptcy estate being administered in the Bankruptcy Case.[17]  Pursuant to 28 U.S.C. § 157(a) and *Miscellaneous Order No. 33: Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1984), the Adversary Proceeding was automatically referred by the District Court to the Bankruptcy Court upon its commencement.[18]

---

[17] *See* 11 U.S.C. § 1334(b) (subject to certain exceptions inapplicable to this Adversary Proceeding, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"); *see also U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002) ("A proceeding is 'related to' a bankruptcy if 'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984))).

[18] *See* 28 U.S.C. § 157(a) ("Each district court may provide that … any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district").

11.     Based upon the nature of the Causes of Action asserted pursuant to the Complaint, the Adversary Proceeding is not a core proceeding pursuant to 28 U.S.C. § 157(b).[19]  Therefore, because none of the Defendants has consented to the Bankruptcy Court's entry of a final judgment on such Causes of Action,[20] the Bankruptcy Court must submit proposed findings of fact and conclusions of law to the District Court, with the District Court to thereafter consider entry of a final judgment upon consideration of such proposed findings and conclusions and a *de novo* review of any matters to which a party timely objects.[21]

12.     Additionally, pursuant to 28 U.S.C. § 157(d), a district court may *sua sponte* withdraw its reference of an adversary proceeding to the bankruptcy court at any time "for cause shown."[22]  Such cause exists where the bankruptcy court lacks the authority to enter a final order or judgment in the adversary proceeding.[23]  Accordingly, in conjunction with providing the following proposed findings and conclusions, the Bankruptcy Court respectfully recommends that the District Court withdraw its reference of the Adversary Proceeding to the Bankruptcy Court due to the inability of the Bankruptcy Court to enter a final judgment on the Causes of Action in the Adversary Proceeding.

---

[19] *See* 28 U.S.C. § 157(b)(1) and (b)(2); *see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

[20] *See* 28 U.S.C. § 157(c)(2) (provision for parties' consent to entry of final judgment on non-core claims); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) (discussing parties' ability to consent to the bankruptcy court's entry of final judgment).

[21] *See* 28 U.S.C. § 157(c)(1); *see also Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014).

[22] *See* 28 U.S.C. § 157(d).

[23] *See, e.g., South v. Life Partners, Inc. (In re Life Partners Holdings, Inc.)*, Civil Action No. 4:16-CV-212-A, 2016 WL 8793512 (N.D. Tex. June 2, 2016).

### *PROPOSED FINDINGS AND CONCLUSIONS AND RECOMMENDATION WITH RESPECT TO DEFAULT JUDGMENT MOTION*

### <u>*Proposed Findings of Fact*</u>[24]

13.     All prior paragraphs are incorporated herein by reference.

14.     Prior to the Petition Date, the Debtor engaged in the vehicle warranty business and made loans in connection with its business.[25]

**A.     The AP Note and AP Note Guaranty (Asset Protection and Large)**

15.     On or about May 27, 2022, the Debtor and Asset Protection entered into an Exclusivity Agreement, effective as of May 27, 2022 (referred to as the "**AP Note**" in the Complaint).[26]

16.     Pursuant to the AP Note, Asset Protection agreed to promote the sale of the Debtor's vehicle warranty policies and products during the term of the agreement in exchange for a one-time payment of $62,500 and the Debtor's provision of a line of credit of up to $125,000 between June 2, 2022, and June 2, 2023.[27]  Under the terms of the AP Note, Asset Protection was to immediately send 50% of all sales to the Debtor during the term of the agreement and to make payments to the Debtor "through the current overfund agreement."[28]

---

[24] The following findings of fact are based upon a combination of the evidence introduced at the October 30, 2024, hearing and the undisputed factual allegations set forth within the Complaint.  *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact….") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[25] Complaint ¶ 12; *see also* Vida Declaration ¶ 2(c).

[26] *See* Complaint ¶ 13; Trustee's Exh. 2 (Exh. G (Supplemental Declaration of Behrooz P. Vida (the "**Supplemental Vida Declaration**") ¶ 3(b) & n.1); Trustee's Exh. 2 (Exh. G-1 (AP Note)).

[27] *See* Complaint ¶¶ 13 and 16; AP Note, at p.1 and ¶ 1.

[28] *See* AP Note ¶¶ 1(c) and 2.

17.    Separately, the Debtor and Asset Protection entered into a Consulting Overfund Agreement, effective June 28, 2022 (the "**Overfund Agreement**").[29]  Pursuant to the Overfund Agreement, Asset Protection agreed to generate sales prospects (*e.g.*, car dealers) for the Debtor's vehicle service contract program and provide certain consulting services in relation thereto, and the Debtor agreed to pay a commission to Asset Protection for each new and used vehicle service contract sold by any car dealer who signed on to the Debtor's vehicle service contract program as a result of Asset Protection's efforts.[30]  In the event of the cancellation of a contract prior to the end of its term, Asset Protection would be required to refund to the Debtor a pro rata portion of the commission associated with the balance of the contract.[31]

18.    Large executed the Overfund Agreement as an individual guarantor.[32]  Pursuant to paragraph 3 of the Overfund Agreement, Large agreed that "[i]n the event the reserve [established and held by the Debtor in relation to the sold warranty policies] goes negative, and pro-rata commission cancellation chargebacks exceed the amounts in reserve, [Asset Protection] and the personal guarantor will owe back any and all monies to the [Debtor] that shall be due."[33] Additionally, Large agreed that "[i]n the event of default, whereby [Asset Protection] is insolvent and unable to pay monies due, the individual(s) as listed on the signature page as the Guarantor of this agreement shall be personally liable for paying any balance due.  Each guarantor shall

---

[29] *See* Complaint ¶ 14; Supplemental Vida Declaration ¶ 3(c) & n.2; Trustee's Exh. 2 (Exh. G-2 (Overfund Agreement)).

[30] *See* Overfund Agreement ¶¶ 1 and 2.

[31] *See id.* ¶ 3.

[32] *See id.* (last page).

[33] *See id.* ¶ 3.

personally guarantee this agreement and the obligations and liabilities hereunder at a rate of 100%."[34]

19.      Pursuant to paragraph 4 of the AP Note, Asset Protection agreed that "if [Asset Protection] breaches any of the covenants or agreements contained in this Agreement, [Debtor] shall be entitled to … repayment of all profits, compensation, commissions, remuneration, or other benefits that [Asset Protection], directly or indirectly, has realized and/or may realize as a result of, or in connection with, any such breach."[35]   While the guaranty provisions of the Overfund Agreement are somewhat ambiguous, the Debtor, Asset Protection, and Large intended paragraph 9 of the Overfund Agreement to provide for Large's personal guaranty of all of Asset Protection's obligations under the AP Note (to such extent, the "**AP Note Guaranty**").[36]

20.      The AP Note and AP Note Guaranty are assets of the Debtor's bankruptcy estate and are under the control of the Trustee.[37]

21.      Asset Protection defaulted on its obligations under the AP Note by failing to use best efforts to promote the sale of Debtor's policies and failing to send Debtor 50% of all sales from May 27, 2022, through at least July 21, 2024.[38]   Therefore, prior to the initiation of the adversary proceeding, the Trustee accelerated all amounts due and owing under the AP Note and made written demand on Asset Protection to pay the full accelerated balance owed on the AP Note.[39]   Asset Protection failed to make such payment in breach of the AP Note.[40]

---

[34] *See id*. ¶ 9.

[35] *See* Complaint ¶ 17; AP Note ¶ 4.

[36] *See* Complaint ¶ 14; Supplemental Vida Declaration ¶ 3(c).

[37] *See* Complaint ¶ 15.

[38] Complaint ¶ 18.

[39] Complaint ¶¶ 18-19; Supplemental Vida Declaration ¶¶ 3(f) and 3(h).

[40] Complaint ¶ 19; Supplemental Vida Declaration ¶ 3(h).

22.    Prior to the initiation of the adversary proceeding, the Trustee also made written demand on Large under the AP Note Guaranty to pay the full accelerated balance owed by Asset Protection on the AP Note.[41]   Large failed to make such payment in breach of the AP Note Guaranty.[42]

23.    All conditions precedent to the Trustee's right to recover under the AP Note and AP Note Guaranty have been performed or have occurred.[43]

24.    As of March 15, 2024, the total amount owed on the AP Note and under the AP Note Guaranty was $125,607.74 (exclusive of attorneys' fees and expenses, which are hereafter addressed).[44]

**B.    *The APG Note and APG Note Guaranties (APG, Seithel and Huddleston)***

25.    On or about December 31, 2021, Joel San Antonio ("**San Antonio**") agreed to provide a $500,000 loan to APG.  The terms of the loan were memorialized in a Promissory Note and Loan Agreement executed by APG, effective December 31, 2021 (the "**APG Note**").[45]

26.    Pursuant to the terms of the APG Note, San Antonio would provide the loan in the form of weekly advances in the amount of $50,000 each starting on January 5, 2022, and ending on March 9, 2022.  Thereafter, APG would be obligated to pay back at least $10,000 of the loan per week, starting on March 18, 2022, from the proceeds of financed vehicle service contracts sold by APG, provided that the full amount of the outstanding balance of the loan was also payable on demand.[46]  Pursuant to paragraph 2 of the APG Note, the "Maturity Date" is defined as "the earlier

---

[41] *Id.*

[42] *Id*.

[43] Complaint ¶ 21.

[44] Complaint ¶ 20.

[45] *See* Complaint ¶ 22; Supplemental Vida Declaration ¶ 3(j) & n.3; Trustee's Exh. 2 (Exh. G-3 (APG Note)).

[46] *See* APG Note ¶ 1.

to occur of: (i) the date on which all sums due hereunder are demanded or accelerated; or (ii) the date of any default by [APG] under the non-monetary obligations of this Agreement that is not cured within ten (10) days from the date it occurs."[47]

27.     On or about December 31, 2021, Seithel executed an Unconditional and Continuing Guaranty Agreement, effective as of December 31, 2021 (the "**Seithel APG Note Guaranty**"), and Huddleston executed an Unconditional and Continuing Guaranty Agreement, effective as of December 31, 2021 (the "**Huddleston APG Note Guaranty**" and together with the Seithel APG Note Guaranty, the "**APG Note Guaranties**"), to personally guaranty all of APG's obligations under the APG Note.[48]

28.     Pursuant to an assignment dated January 23, 2023, San Antonio assigned the APG Note to 462, LLC.[49]  It appears that at the same time San Antonio assigned the APG Note Guaranties to 462, LLC, because on January 30, 2023, 462, LLC further assigned both the APG Note and the APG Note Guaranties to the Debtor.[50]

29.     The APG Note and APG Note Guaranties are assets of the Debtor's bankruptcy estate and are under the control of the Trustee.[51]

30.     APG defaulted on its obligations under the APG Note.[52]  Therefore, on March 15, 2024, the Trustee accelerated all amounts due and owing under APG Note and made written

---

[47] Complaint ¶ 30; APG Note ¶ 2.

[48] Complaint ¶ 23; Supplemental Vida Declaration ¶ 3(k) & n.4; Trustee's Exh. 2 (Exh. G-4 (the APG Note Guaranties)).

[49] Complaint ¶ 24.

[50] Complaint ¶ 25.

[51] *See* Complaint ¶ 26.

[52] Complaint ¶ 27.

demand on APG to pay the full accelerated balance owed on the APG Note.[53]  APG failed to make

such payment in breach of the APG Note.[54]

31.    On March 15, 2024, the Trustee also made written demand on Seithel and

Huddleston under the APG Note Guaranties to pay the full accelerated balance owed by APG on

the APG Note.[55]  Seithel and Huddleston failed to make such payment in breach of the APG Note

Guaranties.[56]

32.    While the APG Note provided that no interest would accrue on the outstanding loan

balance while APG was in compliance with the APG Note, it further provided that, following the

Maturity Date, interest would accrue at the maximum rate of interest allowed under Texas law.[57]

33.    All conditions precedent to the Trustee's right to recover under the APG Note and

APG Note Guaranties have been performed or have occurred.[58]

34.    As of the Maturity Date of March 15, 2024, the outstanding principal balance owed

on the APG Note was $80,000, none of which has been paid by APG, Seithel, or Huddleston.[59]

Therefore, interest has accrued on such balance since March 15, 2024, at the rate of 18% per

annum.[60]  Thus, the total amount owed on the APG Note and under the APG Note Guaranties

(exclusive of attorneys' fees and expenses, which are hereafter addressed) is $80,000 plus 18%

per annum thereon from and after March 15, 2024.

---

[53] Complaint ¶¶ 27-28; Supplemental Vida Declaration ¶¶ 3(n) and 3(p).

[54] Complaint ¶ 28; Supplemental Vida Declaration ¶ 3(p).

[55] *Id.*

[56] Complaint ¶¶ 27-28; Supplemental Vida Declaration ¶¶ 3(o) and 3(p).

[57] *See* Complaint ¶ 30; APG Note ¶¶ 2, 3 and 8.

[58] Complaint ¶ 32.

[59] Complaint ¶ 31; Supplemental Vida Declaration ¶ 3(q).

[60] *See* Complaint ¶ 30; Supplemental Vida Declaration ¶ 3(q).

### C.    The IJJ Note and IJJ Note Guaranty (IJJ and Blakey)

35.    On or about June 14, 2021, San Antonio agreed to provide a $566,000 loan to IJJ. The terms of the loan were memorialized within a Promissory Note and Loan Agreement executed by IJJ, effective June 14, 2021 (the "**IJJ Note**").[61]

36.    Pursuant to the terms of the IJJ Note, San Antonio would provide the loan in the form of weekly advances in the amount of $100,000 each starting on or about June 14, 2021, and on the Monday of the four consecutive weeks thereafter, followed by a final $66,000 advance on the Monday following the last of the four consecutive $100,000 advance weeks.  Thereafter, IJJ would be obligated to pay back at least $10,000 of the loan per week, starting on August 13, 2021, from the proceeds of financed vehicle service contracts sold by IJJ, provided that the full amount of the outstanding balance of the loan was also payable on demand.[62]  Pursuant to paragraph 2 of the IJJ Note, the "Maturity Date" is defined as "the earlier to occur of: (i) the date on which all sums due hereunder are demanded or accelerated; or (ii) the date of any default by [IJJ] under the non-monetary obligations of this Agreement that is not cured within ten (10) days from the date it occurs."[63]

37.    On or about June 14, 2021, Blakey executed an Unconditional and Continuing Guaranty Agreement, effective as of June 14, 2021, to personally guaranty all of IJJ's obligations under the IJJ Note (the "**IJJ Note Guaranty**").[64]

---

[61] *See* Complaint ¶ 33; Supplemental Vida Declaration ¶ 3(r) & n.6; Trustee's Exh. 2 (Exh. G-5 (IJJ Note)).

[62] *See* IJJ Note ¶ 1.

[63] Complaint ¶ 39; IJJ Note ¶ 2.

[64] Complaint ¶ 34; Supplemental Vida Declaration ¶ 3(s) & n.7; Trustee's Exh. 2 (Exh. G-6 (IJJ Note Guaranty).

38.     Pursuant to an Assignment of Promissory Note and Guaranty dated February 26, 2023, San Antonio assigned the IJJ Note to the Debtor.[65]

39.     The IJJ Note and guaranteed recovery rights under the IJJ Note Guaranty are assets of the Debtor's bankruptcy estate and are under the control of the Trustee.[66]

40.     IJJ defaulted on its obligations under the IJJ Note.[67]  Therefore, on March 15, 2024, the Trustee accelerated all amounts due and owing under IJJ Note and made written demand on IJJ to pay the full accelerated balance owed on the IJJ Note.[68]  IJJ failed to make such payment in breach of the IJJ Note.[69]

41.     On March 15, 2024, the Trustee also made written demand on Blakey under the IJJ Note Guaranty to pay the full accelerated balance owed by IJJ on the IJJ Note.[70]  Blakey failed to make such payment in breach of the IJJ Note Guaranty.[71]

42.     While the IJJ Note provided that no interest would accrue on the outstanding loan balance while IJJ was in compliance with the IJJ Note, it further provided that, following the Maturity Date, interest would accrue at the maximum rate of interest allowed under Texas law.[72]

43.     All conditions precedent to the Trustee's right to recover under the IJJ Note and IJJ Note Guaranty have been performed or have occurred.[73]

---

[65] Complaint ¶ 35.

[66] *See* Complaint ¶ 36.

[67] Complaint ¶ 37.

[68] Complaint ¶¶ 37-38; Supplemental Vida Declaration ¶¶ 3(v) and 3(x).

[69] Complaint ¶ 38; Supplemental Vida Declaration ¶ 3(x).

[70] *Id.*

[71] Complaint ¶¶ 37-38; Supplemental Vida Declaration ¶¶ 3(w) and 3(x).

[72] *See* Complaint ¶ 40; IJJ Note ¶¶ 2, 3 and 8.

[73] Complaint ¶ 42.

44.    As of the Maturity Date of March 15, 2024, the outstanding principal balance owed on the IJJ Note was $130,400, none of which has been paid by IJJ or Blakey.[74]  Therefore, interest has accrued on such balance since March 15, 2024, at the rate of 18% per annum.[75]  Thus, the total amount owed on the IJJ Note and under the IJJ Note Guaranty (exclusive of attorneys' fees and expenses, which are hereafter addressed) is $130,400 plus 18% per annum thereon from and after March 15, 2024.

**D.    *Attorneys' Fees and Expenses***

45.    The Trustee retained the law firm of Quilling, Selander, Lownds, Winslett & Moser, P.C. ("**QSLWM**") to represent him in connection with this case.[76]

46.    The Trustee, on behalf of the Debtor's estate, has incurred $20,264.50 in attorneys' fees for services rendered by QSLWM to the Trustee in prosecuting the case (the "**Requested Fees**"), and $708.45 in expenses incurred by QSLWM for the benefit of the Trustee in connection therewith (the "**Requested Expenses**"), for a total of $20,972.95 through August 12, 2024.[77]  Since August 12, 2024, QSLWM has provided additional services to the Trustee, and incurred additional expenses on behalf of the Trustee, totaling $8,084.00, that the Trustee is not seeking to recover in this action.[78]

47.    Having considered the time and labor required on behalf of the Plaintiff in this case, the novelty and difficulty of the questions involved, the skill required to perform the services properly, the preclusion of other employment by the attorneys involved, the customariness of the

---

[74] Complaint ¶ 41; Supplemental Vida Declaration ¶ 3(y).

[75] *See* Complaint ¶ 40; Supplemental Vida Declaration ¶ 3(y).

[76] *See* Martinez Declaration ¶ 1.

[77] *See* Martinez Declaration ¶¶ 17-19; Trustee's Exh. 1 (Exh. 1 (invoices)).

[78] *See* Trustee's Exh. 2 (Exh. F (Supplemental Declaration of Loriann A. Martinez (the "**Supplemental Martinez Declaration**") ¶¶ 4 and 6).

fees charged, the nature of the engagement (*i.e.*, fixed or contingent), the time limitations involved, the amounts at issue in the case and the results to be obtained, the experience, reputation, and ability of the lawyers involved, the desirability/undesirability of the engagement, the nature and length of the relationship between QSLWM and the Trustee, and awards in similar cases, the Requested Fees are reasonable and for services necessarily rendered.[79]

48.    The Requested Expenses constitute actual and necessary expenses incurred by QSLWM in connection with its representation of the Trustee in this case.

49.    Most of the Requested Fees and Requested Expenses were incurred in the pursuit of claims against all three groups of Defendants given their similar facts and legal issues.  While there were small variations in the total fees charged for discrete tasks associated with each particular group of Defendants, the amount of fees associated with those variations is far less than the savings realized by undertaking combined efforts in relation to all three groups of Defendants.[80] Similarly, any variation in the total expenses incurred with respect to each particular group of Defendants is sufficiently *de minimum* that an equal allocation of the expenses among the three Defendant groups is warranted.  Accordingly, it is reasonable to allocate the Requested Fees and Requested Expenses as follows: (a) $6,754.83 in Requested Fees (the "**AP Claim Fees**") and $236.15 in Requested Expenses (the "**AP Claim Expenses**"), for a total of $6,990.98, in relation to prosecution of the AP Note and AP Note Guaranty; (b) $6,754.84 in Requested Fees (the "**APG Claim Fees**") and $236.15 in Requested Expenses (the "**APG Claim Expenses**"), for a total of $6,990.99, in relation to prosecution of the APG Note and APG Note Guaranties; and (c) $6,754.83 in Requested Fees (the "**IJJ Claim Fees**") and $236.15 in Requested Expenses (the "**IJJ Claim**

---

[79] *See* Martinez Declaration ¶¶ 18-19; Trustee's Exh. 1 (Exh. 1 (invoices)).

[80] *See* Supplemental Martinez Declaration ¶ 5.

Expenses"), for a total of $6,990.98 in relation to prosecution of the IJJ Note and IJJ Note Guaranty.

## *Proposed Conclusions of Law*

### A. *Count I – Breach of Contract*

50.     Pursuant to Count I of the Complaint, the Trustee asserts a breach of contract claim against each of the Defendants.

### 1. *Breach of the AP Note and AP Note Guaranty*

51.     First, the Trustee asserts that Asset Protection breached the AP Note.  Under the terms of the AP Note, the parties agreed that the AP Note would be governed by the laws of the State of Arizona.[81]  Under Arizona law, to establish a breach of contract claim, a plaintiff has the burden of proving (1) the existence of the contract, (2) its breach, and (3) the resulting damages.[82]

52.     Here, the Trustee has satisfied his burden of proving the claim for breach of the AP Note by establishing the existence of the AP Note, the Debtor's bankruptcy estate's interest in the AP Note, Asset Protection's breach of the AP Note by failing to use best efforts to promote the sale of Debtor's policies and failing to send Debtor 50% of all sales from May 27, 2022, through at least July 21, 2024, and the resulting damages to the Debtor's bankruptcy estate of $125,607.74 (exclusive of attorneys' fees and expenses).

53.     Second, the Trustee asserts that Large breached the AP Note Guaranty.  The AP Note Guaranty is included within the Overfund Agreement.  Under the terms of the Overfund Agreement, the parties agreed that the Overfund Agreement would be governed by the laws of the State of Texas.[83]  Under Texas law, to establish a breach of contract claim, a plaintiff has the

---

[81] *See* AP Note ¶ 5.

[82] *See Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975).

[83] *See* Overfund Agreement ¶ 6.

burden of proving (1) the formation of a valid contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages from the breach.[84]

54.     A guaranty is a type of contract.  In the context of a guaranty agreement, a breach of guaranty claim under Texas law has four elements: (1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform by the guarantor.[85]

55.     Here, the Trustee has satisfied his burden of proving the claim for breach of the AP Note Guaranty by establishing the existence of the AP Note Guaranty, the Debtor's bankruptcy estate's interest in the AP Note Guaranty, the terms of the underlying contract – being the AP Note (as explained above), the triggering of the obligation to pay under the AP Note Guaranty – namely, Asset Protection's failure to perform its financial obligations under the AP Note, and Large's failure to perform as the guarantor of such obligations under the terms of the AP Note Guaranty resulting in damages to the Debtor's bankruptcy estate of $125,607.74 (exclusive of attorneys' fees and expenses).

### 2.     Breach of the APG Note and APG Note Guaranties

56.     Next, the Trustee asserts that APG breached the APG Note.  Under the terms of the APG Note, the parties agreed that the APG Note would be construed in accordance with the laws of the State of Texas.[86]  The elements of a claim for breach of contract under Texas law are set out above.  A promissory note is a type of contract.  To prevail in a suit on a promissory note under Texas law, a plaintiff must prove: (1) the note in question; (2) the party sued signed the note; (3)

---

[84] *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

[85] *See Fernandez v. Independent Bank*, No. 02-20-00375-CV, 2021 WL 4621758, at *2 (Tex. App. – Fort Worth Oct. 7, 2021, no pet.); *Chahadeh v. Jacinto Med. Group, P.A.*, 519 S.W.3d 242, 246 (Tex. App. – Houston [1st Dist.] 2017, no pet.); *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720 (Tex. App. – San Antonio 2004, no pet.).

[86] *See* APG Note ¶ 8.

the plaintiff is the owner or holder of the note; and (4) a certain balance is due and owing on the note.[87]

57.     Here, the Trustee has satisfied his burden of proving the claim for breach of the APG Note by establishing the existence of the APG Note, that it was signed by APG, that the Debtor's bankruptcy estate is the owner of the APG Note, and that $80,000 plus 18% per annum thereon from and after March 15, 2024, is owed by APG under the APG Note (exclusive of attorneys' fees and expenses).

58.     Turning to the APG Note Guaranties, the Trustee asserts that each of Seithel and Huddleston breached his AP Note Guaranty.  Each of the APG Note Guaranties provides for the agreement to be governed by the laws of the State of Texas.[88]  The elements of a claim for breach of contract and breach of a guaranty under Texas law are set out above.

59.     Here, the Trustee has satisfied his burden of proving both his claim for breach of the Seithel APG Note Guaranty against Seithel, and his claim for breach of the Huddleston APG Note Guaranty against Huddleston, by establishing the existence of the APG Note Guaranties, the Debtor's bankruptcy estate's interest in the APG Note Guaranties, the terms of the underlying contract – being the APG Note (as explained above), the triggering of the obligations to pay under the APG Note Guaranties – namely, APG's failure to pay the APG Note, and each of Seithel's and Huddleston's failure to perform as the guarantor of such obligations under the terms of the respective APG Note Guaranties resulting in damages to the Debtor's bankruptcy estate of $80,000

---

[87] *See Ho v. Saigon Nat'l Bank*, 438 S.W.3d 871, 873 (Tex. App. – Houston [14th Dist.] 2014, no pet.); *Truestar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App. – Dallas 2010, no pet.).

[88] *See* Trustee's Exh. 2 (Exh. G-4, at p.2, ¶ 7 (Huddleston APG Note Guaranty) and at p.5, ¶ 7 (Seithel APG Note Guaranty)).

plus 18% per annum thereon from and after March 15, 2024 (exclusive of attorneys' fees and expenses).

### 3. *Breach of the IJJ Note and IJJ Note Guaranty*

60.    Next, the Trustee asserts that IJJ breached the IJJ Note.  Under the terms of the IJJ Note, the parties agreed that the IJJ Note would be construed in accordance with the laws of the State of Texas.[89]  The elements of a claim for breach of contract under Texas law, as well as the requirements for establishing such a claim in relation to a promissory note, are set out above.

61.    Here, the Trustee has satisfied his burden of proving the claim for breach of the IJJ Note by establishing the existence of the IJJ Note, that it was signed by IJJ, that the Debtor's bankruptcy estate is the owner of the IJJ Note, and that $130,400 plus 18% per annum thereon from and after March 15, 2024, is owed by IJJ under the IJJ Note (exclusive of attorneys' fees and expenses).

62.    Turning to the IJJ Note Guaranty, the Trustee asserts that Blakey breached the IJJ Note Guaranty.  The IJJ Note Guaranty provides for the agreement to be governed by the laws of the State of Texas.[90]  The elements of a claim for breach of contract and breach of a guaranty under Texas law are set out above.

63.    Here, the Trustee has satisfied his burden of proving his claim for breach of the IJJ Note Guaranty against Blakey by establishing the existence of the IJJ Note Guaranty, the Debtor's bankruptcy estate's interest in the IJJ Note Guaranty, the terms of the underlying contract – being the IJJ Note (as explained above), the triggering of the obligations to pay under the IJJ Note Guaranty – namely, IJJ's failure to pay the IJJ Note, and Blakey's failure to perform as the

---

[89] *See* IJJ Note ¶ 8.

[90] *See* Trustee's Exh. 2 (Exh. G-6, at p.2, ¶ 7 (IJJ Note Guaranty)).

guarantor of such obligations under the terms of the IJJ Note Guaranty resulting in damages to the Debtor's bankruptcy estate of $130,400 plus 18% per annum thereon from and after March 15, 2024 (exclusive of attorneys' fees and expenses).

**B.  *Count II – Attorney's Fees, Expenses, and Costs of Court***

64.  Pursuant to Count II of the Complaint, the Trustee requests an award of attorneys' fees, expenses, and costs of court against each of the Defendants.

65.  In relation to the Requested Fees, the Trustee claims that he is entitled to recover such fees pursuant to chapter 38 of the Texas Civil Practice and Remedies Code (the "**TCPRC**"). In that regard, § 38.001 of the TCPRC provides that, in addition to the amount of a valid claim and costs, a plaintiff may recover reasonable attorney's fees from an individual or organization (with certain inapplicable exceptions) if the claim is for a written contract.[91]  To recover such fees, the plaintiff must be represented by an attorney, the plaintiff must have presented the claim to the opposing party or to a duly authorized agent of the opposing party, and the opposing party must not have tendered the just amount owed before the expiration of the 30th day after the claim was presented.[92]  Should Arizona law control in relation to the AP Note, § 12-341.01 of the Arizona Revised Statutes similarly provides that in a contested action arising out of a contract, the court may award the successful party reasonable attorney fees.[93]

66.  With the foregoing in mind, here, all of the breach of contract claims involve written contracts, the Trustee has established the validity of his breach of contract claims in relation to such contracts (as explained above), the Trustee has been represented by counsel (QSLWM) throughout the entire period of his pursuit of collection under the contracts, the Trustee presented

---

[91] *See* Tex. Civ. Prac. & Rem. Code § 38.001(b)(8).

[92] *See id.* § 38.002.

[93] *See* Ariz. Rev. Stat. § 12-341.01.A.

the applicable claim at issue to each Defendant in the form of a written demand for payment at least thirty days before initiating suit, and none of the Defendants tendered to the Trustee the respective amounts owed under the applicable contract at issue. Therefore, the Trustee has successfully established grounds for (a) the recovery of the AP Claim Fees against Asset Protection and Large, jointly and severally, (b) the recovery of the APG Claim Fees against APG, Seithel, and Huddleston, jointly and severally, and (c) the recovery of the IJJ Claim Fees against IJJ and Blakey, jointly and severally.

67.     Turning to the recovery of Requested Expenses, the Trustee claims that he is entitled to recover such expenses pursuant to chapter 38 of the TCPRC and the terms of the contracts at issue. With respect to chapter 38 of the TCPRC, the Trustee is incorrect. Chapter 38 makes no provision for the award of expenses.[94]  As for the contracts, provided each particular contract expressly provides for the recovery of such expenses in the event of a breach, then the associated Requested Expenses are recoverable. With that in mind, while neither the AP Note[95] nor the AP Note Guaranty provides for the recovery of litigation expenses for a breach by Asset Protection or Large, respectively, each of the other contracts at issue – namely, the APG Note, the APG Note Guaranties, the IJJ Note, and the IJJ Note Guaranty – does provide for the same.[96]

68.     Therefore, the Trustee has successfully established grounds for (a) the recovery of the APG Claim Expenses against APG, Seithel, and Huddleston, jointly and severally, and (b) the

---

[94] See Tex. Civ. Prac. & Rem. Code § 38.001, et seq.; see Flint & Assocs. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 626-27 (Tex. App. – Dallas 1987, writ denied); see also Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach, 973 P.2d 106 (Ariz. 1999) (discussing similar limitations under applicable Arizona law).

[95] While the AP Note includes an indemnification provision, the provision's focus is on the protection of the Debtor from litigation brought, and claims made, against the Debtor by a third party, which is obviously not the situation here. See AP Note ¶ 3.

[96] See APG Note ¶ 9; Huddleston APG Note Guaranty ¶ 7; Seithel APG Note Guaranty ¶ 7; IJJ Note ¶ 9; IJJ Note Guaranty ¶ 7.

recovery of the IJJ Claim Expenses against IJJ and Blakey, jointly and severally.  The Trustee has not, however, satisfied his burden of establishing a legal right to the recovery of the AP Claim Expenses against Asset Protection or Large.

69.      Finally, with respect to the Trustee's request for the recovery of costs, Bankruptcy Rule 7054 provides that the court may allow costs to the prevailing party, unless a federal statute or the Bankruptcy Rules provide otherwise.[97]  Here, because the Trustee is the prevailing party and there is no federal statute or other Bankruptcy Rule providing otherwise, an award of costs to the Trustee pursuant to Bankruptcy Rule 7054 is warranted.

## *Recommendation*

70.      Based upon all of the foregoing, the Bankruptcy Court respectfully recommends that the reference of this adversary proceeding to the Bankruptcy Court be withdrawn and that the Default Judgment Motion be granted, denying only the Trustee's request for an award of AP Claim Expenses against Asset Protection and Large.  As such, the Bankruptcy Cout further recommends that a final judgment be entered providing for the following relief:

(a)      In resolution of Count I of the Complaint (Breach of Contract):

(1) For Asset Protection's breach of the AP Note and Large's breach of the AP Note Guaranty, an award of damages in the amount of $125,607.74 to the Trustee (for the benefit of the Debtor's bankruptcy estate) against Asset Protection and Large, jointly and severally;

(2) For APG's breach of the APG Note, Seithel's breach of the Seithel APG Note Guaranty, and Huddleston's breach of the Huddleston APG Note Guaranty, an award of damages in the amount of $80,000 plus 18% per annum thereon from and after March 15, 2024, to the Trustee (for the benefit of the Debtor's bankruptcy estate) against APG, Seithel, and Huddleston, jointly and severally; and

(3) For IJJ's breach of the IJJ Note and Blakey's breach of the IJJ Note Guaranty, an award of damages in the amount of $130,400 plus 18% per annum thereon from

---

[97] *See* Fed. R. Bankr. P. 7054(b)(1).

and after March 15, 2024, to the Trustee (for the benefit of the Debtor's bankruptcy estate) against IJJ and Blakey, jointly and severally;

(b)    In resolution of Count II of the Complaint (Attorney's Fees, Expenses, and Costs of Court):

(1) An award of attorneys' fees in an amount equal to the AP Claim Fees – *i.e.*, $6,754.83 – plus costs of court pursuant to Fed. R. Bankr. P. 7054(b)(1) to the Trustee (for the benefit of the Debtor's bankruptcy estate) against Asset Protection and Large, jointly and severally;

(2) An award of attorneys' fees in an amount equal to the APG Claim Fees – *i.e.*, $6,754.84 – plus litigation expenses in an amount equal to the APG Claim Expenses – *i.e.*, $236.15 – plus costs of court pursuant to Fed. R. Bankr. P. 7054(b)(1) to the Trustee (for the benefit of the Debtor's bankruptcy estate) against APG, Seithel, and Huddleston, jointly and severally;

(3) An award of attorneys' fees in an amount equal to the IJJ Claim Fees – *i.e.*, $6,754.83 – plus litigation expenses in an amount equal to the IJJ Claim Expenses – *i.e.*, $236.15 – plus costs of court pursuant to Fed. R. Bankr. P. 7054(b)(1) to the Trustee (for the benefit of the Debtor's bankruptcy estate) against IJJ and Blakey, jointly and severally; and

(c)    The denial of all other relief requested pursuant to the Complaint or otherwise in

the adversary proceeding.

# # # END OF PROPOSED FINDINGS AND CONCLUSIONS AND RECOMMENDATION # # #